

*U.S. Department of Justice*

*United States Attorney*
*Eastern District of New York*

GDA:WES
F.#2001R01740

*271 Cadman Plaza East*
*Brooklyn, New York  11201*

July 12, 2009

**By Hand Delivery and ECF**
The Honorable Edward R. Korman
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:  United States v. D'Avanzo and Fiseku
          Criminal Docket Nos. 00-CR-824 (ERK)(Fiseku),
          00-CR-903 (RR)(D'Avanzo), 01-CR-1336 (ERK)(Fiseku)
          & 01-CR-1336(ERK) (D'Avanzo)

Dear Judge Korman:

        The government submits this letter in response to the defendants' submissions regarding sentencing for violating the terms of their Supervised Release.  Based upon the return of both defendants, after their release from prison, to the same criminal conduct for which they were originally convicted, and their disregard for the conditions of their Supervised Release, the government recommends that the Court sentence each defendant to 36 months imprisonment, to run consecutively to the state prison sentence the defendants are serving.  Such a result is required by both the circumstances of the defendant's underlying criminal conduct and the law, see United States Sentencing Guidelines, Section 7b1.3(f)("Any term of imprisonment imposed upon revocation of probation or supervised release shall be ordered to be served consecutively to any sentence of imprisonment that the defendant is serving, whether or not the sentence of imprisonment being served resulted from the conduct that is the basis of the revocation of supervised release.").

        At the Court's request, an analysis of the applicable Sentencing Guidelines relevant to a federal arrest for this conduct is include below; this analysis results in a proposed prison term for both defendants of between 27 and 33 months (although it should be noted that this analysis is neither controlling nor necessarily relevant here given the defendants' status on Supervised Release).  Indeed, the fact that both are on Supervised Release coupled with their extensive criminal backgrounds weigh heavily in favor of additional punishment, if

for no other reason, to protect the community. The defendant Beckim Fiseku, only thirty-eight years old (and despite spending almost a decade in prison), has been involved in the following types of crimes: racketeering, marijuana and cocaine trafficking, bank burglaries, bank robberies and home invasion robberies and kidnaping. Further, he has already graduated to Criminal History Category IV in the Sentencing Guidelines. The defendant Lee D'Avanzo, forty years old, has to date been involved in possession and use of a firearm, loansharking, money laundering, marijuana and cocaine trafficking, and residential, commercial and bank burglaries and robberies, including home invasion robberies. D'Avanzo also falls within Criminal History Category IV. Both men are violent criminals.

**A.   Background**

Below is a brief recitation of the defendants' prior federal convictions and the conduct leading up to the charged violation.

**1.   Federal Convictions**

On February 7, 2003, the Court sentenced the defendant Fiseku to 87 months incarceration (to run concurrently with his prior federal sentence) and a term of Supervised Release for racketeering, which included predicate acts involving bank robbery, a home invasion robbery and marijuana distribution conspiracy (<u>United States v. Fiseku</u>, 01-CR-1336 (ERK)).[1] Previously, the defendant was sentenced on December 18, 2001, to a term of 50 months incarceration, followed by five years of Supervised Release, resulting from his guilty plea to a two count superseding information ((<u>United States v. Fiseku</u>, 00-CR-824 (ERK)(another racketeering case involving various bank burglaries)). Fiseku is therefore on Supervised Release from both convictions.

On March 7, 2003, defendant Lee D'Avanzo was sentenced to principally 62 months imprisonment and three years Supervised Release ((<u>United States v. D'Avanzo</u>, 01-CR-1336 (ERK)) for racketeering (involving predicate acts involving multiple robberies, marijuana distribution, loansharking and money

---

[1]   The defendant's applicable Sentencing Guidelines (as reflected on the docket sheet) for this offense was 135 to 168 months. The Court arrived at the 87 month sentence by reducing the 48 months that the defendant had previously served from the low end of the Guideline range (135 months).

laundering) and money laundering. This sentence was to run concurrently with a sentence imposed by Judge Raggi on March 9, 2001 of 60 months imprisonment for narcotics distribution ((<u>United States v. D'Avanzo</u>, 00-CR-903 (RR)), followed by five years of Supervised Release. D'Avanzo is therefore on Supervised Release from both convictions.

### 2.  <u>Violation of Supervised Release</u>

The primary triggering event for the defendants' violation was their New York State arrest. Specifically, on November 27, 2008, both defendants were arrested by the New York Police Department and charged with Burglary in the Third Degree under New York State law. D'Avanzo and Fiseku pled guilty to that charge, and were sentenced to serve 2 ½ to 5 years in state prison. The evidence in that case indicated that D'Avanzo and Fiseku, along with two others, attempted to break into the vault of a bank on Staten Island by drilling through the walls of a neighboring building.

By report dated February 20, 2009, the United States Probation Department charged defendant D'Avanzo with six violations of Supervised Release. The violation charges included the conduct alleged above, coupled with an added charge of associating with convicted felon Bekim Fiseku.

By report dated February 20, 2009, the United States Probation Department charged defendant Fiseku with nine violations of Supervised Release. The violation charges included the bank burglary conduct alleged above, coupled with an added charge of associating with convicted felon Lee D'Avanzo, and charges relating to a marijuana possession arrest by the New York Police Department on June 4, 2008.

### B.  <u>Standard</u>

The Second Circuit has held that sentences for Supervised Release violations must be considered in light of the applicable policy statements, they must be reasonable and they must not exceed the statutory maximum. <u>See</u> <u>United States v. Pelensky</u>, 129 F.3d 63 (2d Cir. 1997). Here, with respect to the issue of whether any sentence imposed by the Court should run concurrently or consecutively, the Sentencing Guidelines are clear:

> [a]ny term of imprisonment imposed upon the revocation of probation or supervised release ***shall be ordered to be served consecutively***

3

>     to any sentence of imprisonment that the
>     defendant is serving, whether or not the
>     sentence of imprisonment being served
>     resulted from the conduct that is the basis
>     of the revocation of probation or supervised
>     release.

U.S.S.G. § 7B1.3(f)(emphasis added).

**C.   Analysis**

The conduct at issue here was not merely a spur-of-the-moment instance of criminal conduct and it must be viewed in light of the defendants' detailed criminal histories. Indeed, both men have been involved in not only this type of criminal activity, but both have been involved – together – in this type of activity with a dangerous racketeering enterprise. The underlying crime here was a carefully planned, sophisticated operation involving surveillance and multiple conspirators. Furthermore, it was timed to coincide with the Thanksgiving holiday, which gave the burglars extensive time and secrecy to attempt to break into the vault of the bank using power tools.

Such criminal conduct is consistent with both defendants' past, in which they have been convicted of racketeering offenses involving numerous LCN associates. Their Supervised Release resulted, in part, from their convictions as members of the "New Springville Boys," a racketeering enterprise with connections to the Bonanno organized crime family, for conduct beginning almost two decades ago. As the Court is aware, the defendants and their criminal associates are serial bank burglars/robbers who have committed crimes throughout the United States. Moreover, the racketeering predicates of the defendants and their associates include numerous acts of violence, including robberies with guns.

More particularly, as part of his association with the New Springville Boys, defendant D'Avanzo admitted to using a firearm to rob or attempt to rob individuals on five separate occasions, including the driver of a delivery truck, a marijuana dealer, and a stockbroker. D'Avanzo also admitted to possessing marijuana with intent to distribute; in fact, the Probation Department found him accountable for over one thousand kilograms of marijuana. (See D'Avanzo's Presentence Investigation Report, 00-CR-1336(1), page 19). D'Avanzo further admitted to conspiring to commit loansharking (the presentence reports indicates that D'Avanzo had approximately $500,000 "on the street,"(see id., page 7)), and conspiring to commit money laundering.

Fiseku, as part of his prior federal conviction admitted to a "smash and grab" robbery of a Citibank branch, in which $165,000 was stolen. Fiseku also admitted to conspiring to rob the owner of a Staten Island restaurant in which Fiseku and two other members of the New Springville Boys entered the victim's home, placed a gun to the head of the victim, beat him, and restrained him with duct tape. No money was taken only because the victim was able to break free and retrieve a weapon from inside his house, thus scaring away his assailants. (See Presentence Investigation Report, 01-CR-1336(7), page 6). Fiseku also admitted to robbing a National Westminster Bank. In that robbery, Fiseku brandished a pellet gun while wearing a mask, handcuffed two bank employees, and stole more than $880,000. (See id., page 7). Fiseku also admitted to participating in a marijuana distribution conspiracy.

In addition, defendant D'Avanzo also participated in an extensive marijuana distribution ring that included Bekim Fiseku and several others. The group was responsible for the distribution of approximately 250 additional kilograms of marijuana. For that conduct, D'Avanzo pled guilty to Conspiracy to Distribute and Possess with Intent to Distribute Marijuana in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(B), a case before Judge Raggi.

And, in addition, defendant Fiseku not only was convicted of participation in the criminal activities of the New Springville Boys (ERK), but also admitted to membership in the "Bank Crew," a group of individuals who committed numerous bank robberies and burglaries from 1992 to 1999. As part of his association with the Bank Crew, Fiseku admitted to two bank burglaries, one in which he stole a little less than $10,000 from a Fleet Bank in New Jersey, and another in which he and others stole $60,000 from a Nations Bank in Maryland. Fiseku also admitted to conspiring to distribute more than 100 kilograms of marijuana.

Despite D'Avanzo and Fiseku's prior federal convictions, and, as reflected in Charge 6 of each Probation Report on Violation of Supervised Release, the defendants have continued associating with each other to burglarize more banks. Therefore, although the Sentencing Guidelines range for the violation of Supervised Release does not approach the three year maximum possible sentence, a guidelines sentence does not reflect the criminal associations, preparation and intent required of the defendants to carry out the bank burglary for which they were

5

convicted in state court.[2] A guidelines sentence also fails to reflect the sophistication of the criminal schemes in which the defendants have engaged, behavior that continues to be consistent with the evidence collected during the investigation leading to their racketeering indictment in 2001.

Each defendant argues that there is no requirement that a guidelines sentence run consecutively to any sentence already imposed, because the guidelines are advisory. The applicable Sentencing Guideline policy statement states, however, that a Supervised Release violation must run consecutively to any sentence already imposed. The reason for this is simple, and applies to this case: were the defendants to be sentenced concurrently with their state sentences, they would essentially go unpunished in federal court for having committed a felony while on Supervised Release. The deterrent effect of being on Supervised Release would be hampered if defendants knew they were not likely to face additional punishment if they were caught committing new crimes.

Each defendant then argues that the sentence imposed by the state court was not "lenient"; therefore, the Court should factor the state sentence into its calculation of a sentence sufficient to comply with the Section 3553(a) statutory purposes. This argument is misleading. In the first place, neither defendant has cited any authority for the proposition that the sentences they received in state court were "harsh" as a matter of law. In fact, the maximum sentence each defendant could have received for the nonviolent D felony for which he was convicted as a second felony offender, New York State Penal Law § 70.06(3)(d), was 3 ½ to 7 years in prison, so the defendants actually received a significant two year reduction below the maximum.

The defendants further argue, without any factual support, that a decision was made to prosecute the burglary in state court as opposed to federal court because the state penalty was higher. Id. This claim is simply mere speculation. To support that argument, defendant D'Avanzo claims that the federal guidelines range would have been only 12 to 18 months; defendant Fiseku claims that the federal guidelines range would have been only 15 to 21 months. These claims are erroneous.

---

[2] The government agrees with defense counsel that the Probation report is erroneous when it calculates a guidelines sentence for bank burglary as a crime of violence.

      The government calculates D'Avanzo's Guidelines range as follows:

| | |
|---|---:|
| Base Offense Level (U.S.S.G. § 2B2.1) | 12 |
| Plus: More Than Minimal Planning (2B2.1(b)(1)) | +2 |
| Plus: Possession of a Dangerous Weapon[3] (2B2.1(b)(4)) | +2 |
| Less: Acceptance of Responsibility (3E1.1) | <u>-2</u> |
| Subtotal: | <u>14</u> |

The government calculates D'Avanzo's criminal history category as follows: (a) 3 points for conviction under 00-CR-903; (b) 3 points for conviction under 00-CR-1336(1)(4A1.1(a); (c) 2 points for commission of instant offense while under Supervised Release (4A1.1(d)); and (d) 1 point for commission of instant offense less than two years after release from imprisonment (4A1.1(e)). Accordingly, the defendant D'Avanzo falls within Criminal History Category IV (with a total of 9 points). Had D'Avanzo been prosecuted in federal court for the bank burglary, he would have faced a Guidelines range of 27 to 33 months imprisonment.

      The government calculates Fiseku's's Guidelines range as follows:

| | |
|---|---:|
| Base Offense Level (U.S.S.G. § 2B2.1) | 12 |
| Plus: More Than Minimal Planning (2B2.1(b)(1)) | +2 |
| Plus: Possession of a Dangerous Weapon (2B2.1(b)(4)) | +2 |
| Less: Acceptance of Responsibility (3E1.1) | <u>-2</u> |
| Subtotal: | <u>14</u> |

---

    [3] The defendants used power tools during the commission of the burglary, which constitute dangerous weapons for Guidelines purposes. See United States v. Pope, 554 F.3d 240 (2d Cir. 2009) (sledgehammer used during bank burglary constituted a dangerous weapon).

The government calculates Fiseku's criminal history category as follows: (a) 3 points for conviction under 00-CR-903; (b) 3 points for conviction under 00-CR-1336(7) (4A1.1(a)); (c) 2 points for commission of instant offense while under Supervised Release (4A1.1(d)); and (d) 1 point for commission of instant offense less than two years after release from imprisonment (4A1.1(e)).  The defendant Fiseku thus also falls within Criminal History Category IV (with a total of 9 points).  Had Fiseku been prosecuted in federal court for the bank burglary, he would have faced a Guidelines range of 27 to 33 months imprisonment.

The defendants also argue that a consecutive sentence imposed by the Court would result in each defendant automatically receiving the maximum five year state prison term before serving any federal sentence, because a "detainer" would be placed on him.  (See D'Avanzo's Sentencing Letter, page 4, footnote 4; Fiseku's Sentencing Letter, page 3, footnote 3).  Neither defendant has cited any authority for this proposition under the New York State Penal or Correction Law, and the government is not aware of any rule which requires a defendant, were he to first begin serving his sentences in state prison, to serve the maximum term in state prison before being released into federal custody.

## CONCLUSION

For these reasons, the government respectfully requests that the Court sentence each defendant to a term of 36 months imprisonment, to run consecutively to the New York State sentence each defendant is serving.

Respectfully submitted,

BENTON J. CAMPBELL
United States Attorney

By: _____
William E. Schaeffer
Greg D. Andres
Assistant U.S. Attorneys
(718) 254-6059/6273

cc:  Clerk of the Court (ERK)(by ECF)
     James Froccaro, Esq. (by ECF)
          (Defense Counsel for defendants D'Avanzo and Fiseku)
     Harry Collins (By ECF)
          (Senior U.S. Probation Officer)

8